UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Application of APR Energy Holdings Limited for Judicial Assistance in Obtaining Evidence in this District for Use in a Foreign and International Proceeding Pursuant to 28 U.S.C. § 1782.* | Case No. 1:17–mc–00216–P1 (S.D.N.Y.)<br><br>*Ex Parte* § 1782 Application in Case No. 1:17–mc–00143–P1 (S.D.N.Y.) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF AUSTRALIA
AND NEW ZEALAND BANKING GROUP LIMITED'S MOTION
TO QUASH THE SUBPOENA, OR, FOR A PROTECTIVE ORDER**

James R. Warnot, Jr.
LINKLATERS LLP
1345 Avenue of the Americas
19th Floor
New York, New York 10105
(212) 903-9000
(212) 839-5599 (fax)
james.warnot@linklaters.com

Adam S. Lurie
LINKLATERS LLP
601 13th Street NW
Suite 400 South
Washington, D.C. 20005
(202) 654-9200
(202) 654-9210 (fax)
adam.lurie@linklaters.com

*Counsel for Non-Party Respondent
Australia and New Zealand Banking
Group Limited*

August 4, 2017

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. Preliminary Statement ............................................................................................................ 1

II. Argument ................................................................................................................................ 2

    A. APR Fails to Demonstrate that ANZ Bank is "Found" in this District for Purposes of § 1782 ........................................................................................................ 2

    B. APR Fails to Demonstrate that the Subpoena is Otherwise Enforceable as a Matter of Law or an Appropriate Exercise of the Court's Discretion .................... 6

        1. Section 1782 May Not Be Used to Obtain Documents Located Outside of the United States ................................................................................................ 6

        2. The *Intel* Factors Weigh Heavily Against Enforcement of the Subpoena ............... 7

    C. APR Fails to Demonstrate that a Stay—Pending a Foreign Sovereign's Potentially Dispositive Challenge to the Proceeding—is Not Appropriate .................. 9

III. Conclusion ............................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ........................................................................... 4

*AM Tr. v. UBS AG*,
78 F. Supp. 3d 977 (N.D. Cal. 2015) ................................................................................ 3, 4, 5

*In re Application of Chevron Corp.*,
709 F. Supp. 2d 283 (S.D.N.Y. 2010) .................................................................................... 10

*In re Application of Hornbeam Corp.*,
No. 14-MC-424 (Part 1), 2017 WL 2241522 (S.D.N.Y. May 22, 2017) .............................. 9, 10

*In re Application of XPO Logistics, Inc.*,
No. 15 Misc. 205 (Part 1), 2016 WL 3528195 (S.D.N.Y. June 22, 2016) ............................... 9

*In re Bracha Found.*,
No. 2:15-mc-748-KOB, 2015 WL 6828677 (N.D. Ala. Nov. 6, 2015) ................................... 10

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) ............................................................................................ 3, 5, 6

*Chase Manhattan Corp. v. Sarrio, S.A. (In re Sarrio, S.A.)*,
119 F.3d 143 (2d Cir. 1997) ............................................................................................ 2, 6, 7

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ........................................................................................................... 5, 6

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789 (LGS), 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ................................. 4

*Giordano v. UBS, AG*,
134 F. Supp. 3d 697 (S.D.N.Y. 2015) .................................................................................. 4, 6

*In re Godfrey*,
526 F. Supp. 2d 417 (S.D.N.Y. 2007) ............................................................................. 6, 7, 9

*Gucci Am., Inc. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014) .................................................................................................... 4

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ........................................................................................................*passim*

*Kipp v. Ski Enter. Corp. of Wis.*,
783 F.3d 695 (7th Cir. 2015) .................................................................................................. 5

*In re Kreke Immobilien KG*,
No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ............................ 2, 8, 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 (NRB), 2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) ............................ 4, 5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) .................................... 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .................................... 4

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ............................................................................................ 5

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ............................................................................................... 9

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ............................................................................................ 5

*Motorola Credit Corp. v. Uzan*,
132 F. Supp. 3d 518 (S.D.N.Y. 2015) .............................................................................. 4

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
No. 13 Civ. 1654 RA, 2014 WL 2610608 (S.D.N.Y. June 10, 2014) ..................................... 6

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*,
745 F.3d 30 (2d Cir. 2014) ................................................................................................ 5

*Samsun Logix Corp. v. Bank of China*,
740 F. Supp. 2d 484 (S.D.N.Y. 2010) ............................................................................... 3

*In re Sarrio, S.A.*,
No. 9-372, 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995) .......................................................... 7

*Sergeeva v. Tripleton Int'l Ltd.*,
834 F.3d 1194 (11th Cir. 2016) ........................................................................................ 7

*SPV OSUS Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015) ............................................................................... 4

*Sullivan v. Barclays PLC*,
No. 13-cv-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ....................................... 3

*In re Technostroyexport*,
853 F. Supp. 695 (S.D.N.Y. 1994) .................................................................................... 8

*Vera v. Republic of Cuba*,
91 F. Supp. 3d 561 (S.D.N.Y. 2015) ............................................................................. 2, 5

*XPO Logistics, Inc. v. Elliott Capital Advisors, L.P.*,
673 F. App'x 85 (2d Cir. 2016) .............................................................................................. 2, 9

**STATUTES & RULES**

International Banking Act of 1978, 12 U.S.C. §§ 3101-3108 ................................................... 2

12 U.S.C. § 3101 ........................................................................................................................ 3

28 U.S.C. § 1782 ................................................................................................................ *passim*

**OTHER AUTHORITIES**

S. Rep. No. 88-1580 (1964) ....................................................................................................... 6

*28 U.S.C. § 1782 as a Means of Obtaining Discovery in Aid of International Commercial Arbitration—Applicability and Best Practices*, N.Y.C. Bar Comm. on Int'l Commercial Disputes ................................................................................................................................. 8-9

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1 (1998) ....... 8

Non-party respondent ANZ Bank[1] respectfully submits this Reply Memorandum of Law (i) in support of its Motion to Quash, ECF No. 1, regarding the *Subpoena Duces Tecum* that APR served on May 3, 2017, and (ii) in response to APR's Memorandum of Law in Opposition to ANZ Bank's Motion to Quash (the "**Response**"), ECF No. 11.

## I.    Preliminary Statement

In the Response, APR does not dispute that it seeks to enforce the Subpoena, issued under 28 U.S.C. § 1782, for documents located only in Australia, which ANZ Bank's New York branch cannot access, and where every other material connection involves Australia—not New York. *See* Moving Br. at 1. Instead, APR asserts that the Subpoena should be enforced, but APR: (a) ***fails to disclose*** to the Court the repeated decisions in this Circuit and others warning against and ***rejecting*** APR's argument that ANZ Bank is "found" in this district, as § 1782 requires; (b) otherwise fails to demonstrate that the Subpoena is enforceable as a matter law, or under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); and (c) fails to show that a stay of these proceedings is inappropriate here.

In arguing that ANZ Bank is "found" in this district, APR claims that ANZ Bank has "consented" to jurisdiction here, pointing to various banking regulations. *See* Response at 9-11. However, the Second Circuit has warned against APR's assertion, and consistent with this warning, a number of other courts in this district and others have rejected APR's and similar claims of consent. APR, however, has not disclosed any of these decisions to the Court.

APR otherwise fails to demonstrate that the Subpoena is enforceable as a matter of law, or appropriate under *Intel*. For instance, APR does not dispute that the weight of authority in this Circuit—unlike the non-binding and inapposite cases from the Eleventh Circuit that APR cites—holds that § 1782 may not be used to obtain documents located outside of the United States. Nor does it address any of the factors that led the Second Circuit to conclude that "there

---

[1]    Defined terms used herein are given the same meaning as in the Memorandum of Law in Support of ANZ Bank's Motion to Quash the Subpoena, or, for a Protective Order (the "**Moving Brief**"), ECF No. 2.

1

is reason to think that Congress intended to reach only evidence located within the United States." *In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997). Further, APR fails to address why, as a matter of the Court's discretion under *Intel*, the Court should not refuse to enforce the Subpoena here because all potentially responsive documents are in Australia, and ANZ Bank in New York does not even have access to them. APR's failure to address this issue is particularly damaging to APR, especially because in similar circumstances Judge Buchwald explained that "[t]his is an enormous demand" that the Court should not grant. *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013).

Finally, APR fails to show that a stay of these proceedings is inappropriate. APR does not even address the Second Circuit's decision in *XPO Logistics, Inc. v. Elliott Capital Advisors, L.P.*, which demonstrates that a stay is especially appropriate here because disposition of issues in the Arbitration may affect the resolution of the Subpoena. Instead, APR improperly asserts—without explanation—that enforcement of the Subpoena will "serve the interests of justice, fair play and full disclosure." Response at 25. These principles, however, will be served whether the Subpoena is enforced now or later, whereas a stay will save considerable resources for ANZ Bank and the Court.

For these reasons, and those that follow, the Court should issue an order quashing the Subpoena, or, alternatively, for a stay of these proceedings.

## II. Argument

### A. APR Fails to Demonstrate that ANZ Bank is "Found" in this District for Purposes of § 1782.

APR first argues that ANZ Bank has "consented" to jurisdiction, and points to various banking regulations to support its assertion; including, the International Banking Act of 1978 (the "**IBA**"), 12 U.S.C. §§ 3101-3108.[2] *See* Response at 7 n.3 & 9-11. However, APR fails to

---

[2]   APR also points to regulations which APR claims permit banks to "operate in New York." *See* Response at 11 (citing *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 571 (S.D.N.Y. 2015).

address the repeated decisions in this Circuit and others warning against and rejecting APR's and similar assertions.

The Second Circuit has expressly warned courts against finding "consent" jurisdiction based on "bureaucratic measures" like the regulations that APR cites. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 639 (2d Cir. 2016). Indeed, in *Brown*, the Second Circuit further warned that relying on such measures would "risk unravelling the jurisdictional structure envisioned in *Daimler* and *Goodyear* based only on a slender inference of consent pulled from [such] routine [measures] that were largely designed for another purpose entirely." *Id*. Notwithstanding the relevance of *Brown* to APR's argument, APR fails to discuss it.

The IBA provisions that APR purports to rely upon are the precise kind of "routine" and "bureaucratic measures" that *Brown* warned against. Indeed, the IBA is merely a "statutory scheme that contemplates regulation of federally chartered branches by the Comptroller of the Currency [and] speaks not in general of 'rights and privileges,' but of treatment by the Comptroller." *Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 490 (S.D.N.Y. 2010). That a foreign bank must comply with U.S. banking regulations does not make a bank "at home" in this district, or create jurisdiction anywhere. *See Samsun Logix Corp.*, 740 F. Supp. 2d at 491-92 (noting "[c]ourts that have plumbed the IBA for jurisdictional anchors have come up empty-handed," and citing cases).[3] Consistent with the warning in *Brown*, courts in this district and others have repeatedly rejected APR's purported "consent" argument based on various New York or federal laws.[4]

---

[3] As discussed further below, "[n]othing in the IBA causes [a bank's] branches to be 'at home' in the U.S." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015). The IBA defines a "foreign bank" as "any company organized under the laws of a foreign country . . . which engages in the business of banking," 12 U.S.C. § 3101(7), and a "federal branch" as "a branch of a foreign bank established and operating under section 3102 of this title," *id.* § 3101(6). Thus, the very IBA regulations that APR cites make clear that ANZ Bank's New York branch ***is foreign***. *See id.*

[4] *See, e.g., Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 WL 685570, at *39-40 (S.D.N.Y. Feb. 21, 2017) (noting that courts in this district have "uniformly rejected" such arguments, collecting cases, and holding that "New York does not have personal jurisdiction over any Foreign Defendant by reason of its registration of a branch office" in New York); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL

In *Motorola Credit Corp.*, Judge Rakoff stated the following when rejecting APR's very argument:

> [T]o find that satisfaction of requirements mandatory for operation of a branch in New York signal constitutional consent to jurisdiction would directly contradict *Gucci*. *Gucci* stands for the proposition that mere operation of a branch office in a forum—and satisfaction of any attendant licensing requirements—is not constitutionally sufficient to establish general jurisdiction. Accordingly, the Court finds that the banks did not consent to this Court's jurisdiction by registering or being licensed under New York Banking Law § 200 or federal law.

132 F. Supp. 3d at 521-22.  Once again, APR fails to address *any* of these decisions.

For similar reasons, courts in other districts have also rejected APR's argument.  For example, in *AM Trust v. UBS AG*, the court explained that "[plaintiff's] argument that [defendant] is subject to general jurisdiction because it is regulated by the IBA, which applies federal banking law to U.S. branches of foreign banks, amounts to saying that a foreign corporation is subject to general personal jurisdiction in the U.S. simply because U.S. operations are governed by U.S. law." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015).  As the court further explained, **"[n]othing in the IBA causes [defendant bank's] branches to be 'at home' in the U.S. rather than in Switzerland, where [defendant bank] is incorporated and headquartered."** *Id.*  Accordingly, the court granted the defendants' motion to dismiss, concluding that the defendant bank "is not subject to general jurisdiction in this District (or anywhere in the United States) because it is incorporated in Switzerland and its principal place of business is in Switzerland." *Id.*[5]

---

2262 (NRB), 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) (refusing to infer "consent" from DFS registration based on *Brown*); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016) (finding that "any consent to jurisdiction by virtue of the [defendants'] registration with the [DFS] is not general jurisdiction over all claims, but instead is limited to claims arising out of transactions with the [defendants'] New York agencies or branches"); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *11 (S.D.N.Y. Mar. 31, 2015) ("The plain language of this provision limits any consent to personal jurisdiction by registered banks to *specific* personal jurisdiction."); *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 521-22 (S.D.N.Y. 2015) (discussed below); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013) (rejecting argument that "defendants consented to general jurisdiction in New York by registering with [DFS]").

[5]  Courts in this district have cited this case with approval at least twice.  *See Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 707 (S.D.N.Y. 2015); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015).

Even more, APR fails to advise the Court that Judge Buchwald has expressly rejected APR's reliance on *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 571 (S.D.N.Y. 2015), for APR's "consent" argument. *See* Response at 11. Indeed, Judge Buchwald explained that *Vera* simply "held that 'foreign banks operating local branches in New York . . . [have] obligations to participate as third-parties in lawsuits which involve assets under their management,' **not** that such banks have consented to general jurisdiction in New York." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (quoting *Vera*, 91 F. Supp. 3d at 570) (emphasis in original). As discussed above, Judge Buchwald further pointed to *Brown* to reject APR's consent argument. *Id.* (quoting *Brown*, 814 F.3d at 639).

APR's second argument is equally meritless. APR asserts that "[a]t a minimum, ANZ has engaged in 'systematic and continuous local activities' sufficient to conclude that it is 'found' in the District for purposes of Section 1782." Response at 12. As APR concedes, "'found' may be 'be regarded as referring to **judicial precedents that equate systematic and continuous local activities with presence**.'" Response at 12 (APR's emphasis) (citations omitted). Such activities, however, must be so "**continuous and systematic**" as to "render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 (2014) (emphasis added) (citation omitted). The Second Circuit has expressly relied on *Daimler* to establish "that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business— the 'paradigm' cases." *Brown*, 814 F.3d at 627.[6] Thus, for a court to exercise general jurisdiction over a foreign corporation, "[e]ssentially, the foreign entity must be 'comparable

---

[6] *See also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 37-41 (2d Cir. 2014) (per curiam) (granting writ of mandamus where district court's denial of motion to dismiss for lack of personal jurisdiction was "patently erroneous" in light of *Daimler*); *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (noting *Daimler*'s "stringent criteria"); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("*Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation."); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that, post-*Daimler*, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

to a domestic enterprise in that State.'" *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 RA, 2014 WL 2610608, at *8 (S.D.N.Y. June 10, 2014) (quoting *Daimler*, 134 S. Ct. at 758 n.11). For the reasons set forth in ANZ Bank's Moving Brief, *see* Moving Br. at 3, 9-11, there are no alleged facts here to support such a finding.[7]

### B. APR Fails to Demonstrate that the Subpoena is Otherwise Enforceable as a Matter of Law or an Appropriate Exercise of the Court's Discretion.

#### 1. *Section 1782 May Not Be Used to Obtain Documents Located Outside of the United States.*

APR fails to dispute that "[t]he bulk of authority in this Circuit" holds that "for purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States." *In re Godfrey*, 526 F. Supp. 2d 417, 423-24 (S.D.N.Y. 2007). Nor does it address sufficiently the Second Circuit's conclusion that "there is reason to think that Congress intended to reach only evidence located within the United States," *Chase Manhattan Corp. v. Sarrio, S.A. (In re Sarrio, S.A.)*, 119 F.3d 143, 147 (2d Cir. 1997), or the legislative history that "supports the conclusion that the statute was intended to aid 'in obtaining oral and documentary evidence *in the United States*,' S. Rep. No. 88-1580 (1964), and was 'not intended to provide discovery of evidence maintain[ed] within a foreign jurisdiction.'" *In re Godfrey*, 526 F. Supp. 2d at 423 (quoting *In re Sarrio, S.A.*, No. 9-372, 1995 WL 598988, at *2 (S.D.N.Y. Oct. 11, 1995)) (emphasis added). Nor could it—these authorities all condemn precisely what APR is improperly attempting to do here.

In fact, while APR purports to rely upon the opinions of Professor Hans Smit and Judge Rakoff in *Godfrey*, Response at 12, APR ignores that both Professor Smit and Judge Rakoff

---

[7] APR's "recitation of various alleged New York contacts" fails to satisfy *Daimler*, "which requires that [ANZ Bank's] in-forum contacts be 'judged against' all of its 'national and global activities,'" and "offers nothing to show that [ANZ Bank's] alleged New York contacts are such a substantial portion of its total global operations that it should be deemed to be 'at home' here." *Giordano*, 134 F. Supp. 3d at 707. Indeed, Judge Buchwald has concluded "without hesitation" that there was no general jurisdiction over defendants incorporated abroad and with a principal place of business abroad, even in the case of defendants that "had continuous and systematic contacts [in the forum], which were both substantial in an absolute financial sense, and significant to the defendant's business." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *20-21 (S.D.N.Y. Aug. 4, 2015).

conclude that APR's argument is wrong and contrary to § 1782's legislative history, and reason that there are "potent reasons for not giving Section 1782 th[is] extraterritorial effect." *See* Moving Br. at 11-13 & n.7.

Further, APR relies upon non-binding and inapposite cases from the Eleventh Circuit, as well as a few outlying decisions from courts in this district. *See* Response at 15-18.[8] However, as the Moving Brief establishes and APR does not contest, adopting APR's assertion here would open the courthouse doors to the world, saddling this Court (and taxpayers) with the enormous burden of facilitating discovery of foreign documents, for foreign litigants, in foreign disputes involving a foreign country, and no other material connection to the United States. The Court should reject this assertion.

    2. *The* Intel *Factors Weigh Heavily Against Enforcement of the Subpoena.*

APR also fails to address a number of significant factors that weigh against the Court's enforcement of the Subpoena under *Intel*. For example, APR fails to argue that the Court should enforce the Subpoena under *Intel* despite the location of the documents in Australia, and that ANZ Bank in New York does not even have access to them. APR's failure to address the absence of any connection to New York here is particularly damaging to APR, especially when combined with the other undue burdens that the Subpoena places on ANZ Bank. Indeed, for the reasons Judge Buchwald explained in *In re Kreke Immobilien KG*, which are equally applicable here, "[t]his is an enormous demand" that the Court should not grant. No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013); *see* Moving Br. at 15-16.

---

[8] As set forth in the Moving Brief, the outlying decisions that APR cites from within this district are inapplicable here. *See* Moving Br. at 12 n.5. The Eleventh Circuit decision that APR cites, *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016); is similarly inapposite. The respondent in *Sergeeva* was a U.S. company, and the case did not involve the otherwise non-existent connections to the United States that are at issue here. *See id.* at 1199 n.2. Further, contrary to the Second Circuit's guidance in *In re Sarrio, S.A.*, the *Sergeeva* court refused to consider the legislative history of § 1782 in its analysis. *See* 834 F.3d at 1200.

Further, APR never disputes that the ***AUSFTA, which governs the Arbitration, does not even provide for investor-State dispute settlement.*** *See* Moving Br. at 19.[9] Instead, APR simply asserts that its likelihood of success in Arbitration is "irrelevant," Response at 20; that the lack of a seated tribunal "is of no importance," *id.* at 21; and concedes that the relevant rules and procedures governing the purported Arbitration are still unknown, *see id.* at 21-24.

In the circumstances APR describes, however, discovery under § 1782 is improper because it would interfere with the orderly processes of the tribunal. *See* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 8-9 (1998). In fact, the first reported decision on whether § 1782 could be used in arbitration, *In re Technostroyexport*, 853 F. Supp. 695 (S.D.N.Y. 1994), quashed the subpoena, because the applicant had "made no effort to obtain any ruling from the arbitrators," and had instead "come directly to the Federal District Court." *Id.* at 697. The Court noted that "[a]rbitrators govern their own proceedings, typically without assistance or intervention by a court," and that "pre-hearing discovery is a matter governed by the applicable rules" and "by what the arbitrators decide." *Id.* at 697-98. It concluded that "under these circumstances, it would be improper to order the discovery requested," and vacated the subpoenas "without prejudice to a future application based on the ruling of [the] arbitrators." *Id.* at 697, 699.[10] Here, too, the Subpoena is inappropriate.

---

[9] APR's supporting declaration simply states that APR has brought its claims "pursuant to the investment provisions of the [AUSFTA] and under the UNCITRAL Rules," Rooney Decl. ¶ 14, without citing any specific provisions or theory of consent to arbitration, and speciously asserts "[t]he [Permanent Court of Arbitration] tacitly rejected the jurisdictional objection when its Secretary-General named an appointing authority in written correspondence that recounted the positions of the parties on arbitration," *id.* ¶ 19. As set forth in the Morrison Declaration, however, APR is wrong—the Arbitrators must still decide the jurisdictional issue, and will likely find against APR. *See* Morrison Decl. ¶¶ 16-21.

[10] *See* Smit, *supra*, at 9 (citing Judge Griesa's "admirably reasoned decision" in *In re Technostroyexport*, and explaining that "the rule in relation to international arbitral tribunals should be that American courts should honor an application under Section 1782 only if the application is approved by the arbitral tribunal"); *see also 28 U.S.C. § 1782 as a Means of Obtaining Discovery in Aid of International Commercial Arbitration—Applicability and Best Practices*, N.Y.C. Bar Comm. on Int'l Commercial Disputes, at 30 (recommending "that Section 1782 discovery be granted only if the request is made by the arbitrators or with the consent of the arbitrators and that, therefore, district courts consider the source of the request as a very important factor in exercising its discretion").

Finally, APR erroneously argues that whether the materials would be discoverable in Australia or elsewhere is immaterial, and that this would impose an impermissible foreign-discoverability requirement. *See* Response at 22-24. However, this argument ignores the Second Circuit's finding that a determination of foreign discoverability is a "useful tool" in the exercise of the Court's discretion under § 1782. *In re Application of XPO Logistics, Inc.*, No. 15 Misc. 205 (Part 1), 2016 WL 3528195, at *3 (S.D.N.Y. June 22, 2016) (quoting *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015)); *see also* Moving Br. at 21-22. For the reasons above, and those cited in the Moving Brief, enforcement of the Subpoena here is therefore inappropriate, especially because "the connection to the United States is slight at best and the likelihood of interfering with [foreign] discovery policy is substantial." *See, e.g.*, *In re Godfrey*, 526 F. Supp. 2d at 424; *In re Kreke Immobilien KG*, 2013 WL 5966916, at *4.

### C. APR Fails to Demonstrate that a Stay—Pending a Foreign Sovereign's Potentially Dispositive Challenge to the Proceeding—is Not Appropriate.

Finally, APR fails to show that a stay of these proceedings is inappropriate. Instead of addressing the Second Circuit's decision in *XPO Logistics, Inc. v. Elliott Capital Advisors, L.P.*, 673 F. App'x 85 (2d Cir. 2016) (Summary Order), which demonstrates that a stay is especially appropriate here because disposition of issues in the Arbitration may affect the resolution of the Subpoena, APR simply asserts—without explanation— that a stay of discovery is "neither necessary nor proper" because the requested materials will "serve the public interests in justice, fair play, and full disclosure . . . . as well as truth in foreign actions." Response at 25 (quoting *In re Application of Hornbeam Corp.*, No. 14-MC-424 (Part 1), 2017 WL 2241522, at *2 (S.D.N.Y. May 22, 2017)) (alteration in original). These decisions, however, are not applicable here.[11] Moreover, these principles will be served if the Subpoena

---

[11] *Hornbeam*, as well as the two cases quoted therein, concerned a ***stay pending appeal***, where courts apply a well-established four-factor test, one factor of which is "where the public interest lies." 2017 WL 2241522, at *1-2 (quoting *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 310 (S.D.N.Y. 2010); *In re Bracha Found.*, No. 2:15-mc-748-KOB, 2015 WL 6828677, at *4 (N.D. Ala. Nov. 6, 2015)). All three of those courts made express "public interest" findings that have no bearing on the propriety of a stay here. Even then, *Hornbeam*

is enforced later, whereas a stay potentially will (i) save ANZ Bank from incurring unnecessary costs, related burdens, and the premature production of sensitive and other information; (ii) conserve this Court's resources; and (iii) in the unlikely event the tribunal exercises jurisdiction, allow the tribunal to properly manage discovery. Accordingly, to the extent the Court will not yet agree to quash the Subpoena, the Court should stay discovery pending resolution of Australia's jurisdictional challenge to the arbitral forum.

## III. Conclusion

For the foregoing reasons, ANZ Bank respectfully requests that this Court quash the Subpoena, or, in the alternative, issue a stay of these proceedings.[12]

Dated: August 4, 2017

Respectfully submitted,

*s/ Adam S. Lurie*
Adam S. Lurie
   601 13th Street NW
   Suite 400 South
   Washington, D.C. 20005
James R. Warnot, Jr.
   1345 Avenue of the Americas
   19th Floor
   New York, New York 10105
LINKLATERS LLP
(202) 654-9200
(202) 654-9210 (fax)
adam.lurie@linklaters.com

*Counsel for Non-Party Respondent Australia and New Zealand Banking Group Limited*

---

also based its denial of a stay on the fact that "a protective order is currently in place that limits Hornbeam's use of the evidence and requires that Hornbeam seek permission from this Court before using such materials." *In re Application of Hornbeam Corp.*, 2017 WL 2241522, at *2. There is no such protective order in place here.

[12]   APR claims that ANZ Bank did not seek to defray the costs of production by requesting payment or seeking a cost-shifting order, *see* Response at 18-19, but APR has so far refused this relief. If the Court enforces the Subpoena (and we respectfully urge the Court not to do so), ANZ Bank will make such a request.