USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/1/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AUSTRALIA AND NEW ZEALAND BANKING :
GROUP LIMITED, :
 :
                          Plaintiff, :   17-MC-00216 (VEC)
 :
      -against- :   MEMORANDUM
 :   <u>OPINION & ORDER</u>
APR ENERGY HOLDING LIMITED, :
 :
                        Defendant. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Australia and New Zealand Banking Group Limited ("ANZ Bank" or "Bank") has commenced this action in order to quash a subpoena served on it pursuant to 28 U.S.C. § 1782 by APR Energy Holding Limited ("APR"). APR seeks documents from ANZ Bank as a nonparty for use in a foreign arbitration proceeding against the country of Australia. Because the Court lacks personal jurisdiction over ANZ Bank, the Bank's motion to quash is granted.

## BACKGROUND

ANZ Bank is incorporated and headquartered in Australia. Kucharski Decl. ¶ 99(a) (Dkt. 4). It has a significant global presence, but the majority of its operations are based in the Oceania and Asia-Pacific regions; a small fraction of ANZ Bank's activities take place in New York. Maddigan Decl. ¶¶ 3-7 (Dkt. 3). For example, ANZ Bank has 1,127 branches and representative offices; five are in the United States, including one in New York and four in Guam and American Samoa. *Id.* ¶ 3. Only 140 out of ANZ Bank's 46,554 full-time employees are based in the New York office. *Id.* ¶ 6. In addition, only 2% of the Bank's $697 billion in assets, 2% of its operating income, and 2% of its profits are attributable to the New York office. *Id.* ¶ 7.

This dispute is preceded by extensive multi-national litigation, which the Court will address briefly. In July 2013, ANZ Bank recorded a general security interest over all present and after-acquired property of Forge Group Power Pty. Ltd. ("Forge"), an Australian company, as security for a loan to Forge. Patrikoff Decl. ¶ 13 (Dkt. 12-2); Memorandum of Law in Support of Application for Judicial Assistance at 3 (Dkt. 12-1). In October 2013, APR, a supplier of "turnkey power generation solutions," through its subsidiaries, was assigned ownership of four mobile gas turbines that were being leased by Forge, plus the lease itself. Kucharski Decl. ¶ 8.

On February 11, 2014, Forge initiated a bankruptcy proceeding. *Id.* ¶ 9. Pursuant to the Australian Personal Property Securities Act ("PPSA"), if a holder of a non-possessory interest in personal property fails to register its interest prior to the time the party in possession of the property becomes insolvent, title to the property vests with the estate of the party in possession, and the non-possessory interest holder becomes an unsecured creditor. *See id.* ¶¶ 42-47. Because APR did not register the required financing statement relating to the four turbines, APR became an unsecured creditor, and title to the turbines vested with the estate of the entity in possession—Forge. *Id.* ¶ 10. Forge's receivers, who were appointed by ANZ Bank (Forge's primary secured creditor), refused APR's demand for the turbines, despite APR's claim that it was entitled to them under the terms of the lease. Patricoff Decl. ¶¶ 15-18.

APR and others initially brought suit in federal court in Florida to claim title to the turbines. *See Power Rental OP Co Austl. LLC v. Forge Grp. Power Pty. LTD*, No. 3:14-CV-00445 (M.D. Fla filed Apr. 17, 2014). Subsequently, APR agreed to litigate its dispute with Forge in an Australian court. Kucharski Decl. ¶¶ 13, 15. The parties litigated the case to Australia's highest court, and Forge prevailed. *Id.* ¶¶ 16-18. After the Australian litigation had run its course, in July 2016, APR sued Forge in Texas state court. *See APR Energy Holdings*

*Ltd. V. Forge Grp. Power Ltd.*, No. 201646548 (Tex. Dist. Ct. Harris Cty. filed July 12, 2016). The Texas court dismissed the case for lack of personal jurisdiction; APR's appeal is pending. Kucharski Decl. ¶¶ 20-22.

On April 14, 2017, APR initiated arbitration against Australia pursuant to Article 3 of the UNCITRAL Arbitration rules and the Australia-United States Free Trade Agreement ("AUSFTA"). Rooney Decl. ¶¶ 14-15 (Dkt. 11-2). APR claims that the divestment of its ownership interest in the turbines, through the application of the PPSA, is an expropriation of private property that violates the AUSFTA. *See* APR Energy Holdings Limited's Memorandum of Law in Opposition ("Def. Opp.") 4, 7 (Dkt. 11). On May 15, 2017, Australia responded to APR's notice of arbitration, arguing that the tribunal lacks jurisdiction and that APR's claims are without merit. Rooney Decl. ¶ 16. APR and Australia are in the process of appointing three arbitrators. *Id.* ¶ 21.

On April 28, 2017, in a separate proceeding in this court, Judge Oetken granted APR's *ex parte* application to subpoena ANZ Bank's New York branch office pursuant to 28 U.S.C. § 1782. Order, No. 1:17-MC-00143-P1 (S.D.N.Y. filed Apr. 28, 2017), ECF No. 4. Pursuant to its subpoena, APR seeks documents from ANZ Bank regarding ANZ Bank's financial transactions with Forge, Forge's financial condition and insolvency during the relevant period, the recording of ANZ Bank's lien, and the actions taken by Forge's receivers. *See* Lurie Decl. Ex. A; Patricoff Decl. ¶¶ 26-32. APR claims that it needs the documents to show that the PPSA enabled ANZ Bank, acting through Forge's receivers, to take APR's investment in Australia in a way that violated the AUSFTA. *See* Def. Opp. 9. All responsive documents are located in Australia. Kucharski Decl. ¶ 99(c); Oral Argument Tr. 14:7-17. On June 22, 2017, ANZ Bank moved to quash the subpoena. Dkt. 1.

3

**DISCUSSION**

Pursuant to 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782. An applicant must satisfy three requirements in order for a court to enforce a section 1782 subpoena: (1) the person from whom discovery is sought must "reside" or "be found" in the district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person."[1] *In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002). If the three requirements are met, the court has discretion whether to enforce the subpoena, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260 (2004), and there are a series of factors the court must consider when exercising its discretion, *see In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007).

The parties dispute whether these criteria are satisfied. In particular, the parties dispute whether ANZ Bank resides or is found in New York on account of its New York branch office. ANZ Bank argues that section 1782's requirement that the person be found or reside in the district refers to personal jurisdiction. *See* Memorandum of Law in Support of Australia And New Zealand Banking Group Limited's Motion to Quash ("Pl. Mem.") 9-10 (Dkt. 2). ANZ Bank points to *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), in which the Supreme Court held that in order for there to be general personal jurisdiction in a state, a company's contact with that state must be so constant and pervasive when judged against its national and global activities that it is essentially at home in that state. *Id.* (citing 134 S. Ct. at 761-62). ANZ Bank argues that its

---

[1] In addition, section 1782 provides, "To the extent that the [court's] order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782.

contacts with New York do not rise to that level and that therefore there is no personal jurisdiction over it. *See id*. at 10. APR, on the other hand, contends that section 1782's requirement that the person be found or reside in the district does not refer to personal jurisdiction and that ANZ Bank is found in New York as that term is used in section 1782 because it has continuous and systematic contacts through its New York office. *See* Def. Opp. 9, 12-13; Oral Argument Tr. 2:21-3:11, 6:18-21, 14:23-15:7.

Whether section 1782's requirement that the person be found or reside in the district equates to a requirement that the court have personal jurisdiction over the person in order to enforce a section 1782 subpoena is unclear. The District Court for the District of Columbia explicitly highlighted this ambiguity:

> Courts considering whether to grant a petition for assistance pursuant to 28 U.S.C. § 1782 have analyzed their authority by referencing the language in section 1782—whether it is a district "in which a person resides or is found"—rather than discussing whether the Court has subject matter and personal jurisdiction over the entity or person from whom discovery is sought. To some extent, courts have considered these inquiries to be the same. . . . At minimum, they overlap considerably. . . .

*In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 295 n.4 (D.D.C. 2011) (internal citations omitted).

Regardless of what section 1782 requires, the Constitution's due process protections apply. To lawfully exercise personal jurisdiction, a federal court must satisfy three primary requirements: (1) there must be proper service, (2) there must be a statutory basis to exercise personal jurisdiction, *and* (3) the exercise of personal jurisdiction must comport with constitutional due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). The Court need not reach the issue of whether section 1782 provides a basis to exercise personal jurisdiction—essentially the issue disputed by the parties as described above—because the constitutional requirements are not satisfied here.

5

APR argues that courts have not applied the Constitution's due process protections to section 1782 subpoenas. *See* Def. Opp. 13-14; Oral Argument Tr. 2:18-3:11. The Second Circuit, however, has held unequivocally that a federal court "must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014); *see also Matter of Marc Rich & Co., A.G.,* 707 F.2d 663, 669 (2d Cir. 1983) ("A federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction."). There is no meaningful distinction from a constitutional standpoint between a subpoena issued to a nonparty pursuant to Rule 45 and a subpoena issued to a nonparty pursuant to section 1782, and APR has failed to articulate any such distinction. Accordingly, the Court must have personal jurisdiction over ANZ Bank in order to enforce APR's subpoena.

The Court does not have general personal jurisdiction over ANZ Bank. In *Daimler*, the Supreme Court held that a corporation may be subject to general jurisdiction in a state only when its contacts with the state are so "continuous and systematic as to render [it] essentially at home in the forum [s]tate," taking into account the corporation's national and global activities. 134 S. Ct. at 761-62 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court explained that, absent exceptional circumstances, a corporation is "at home" for the purpose of constitutional due process only in a state that is the corporation's place of incorporation or its principal place of business. *See id.* at 761 & n.19. In *Gucci*, the Second Circuit applied *Daimler* to hold that the court did not have general jurisdiction over a nonparty foreign bank in order to enforce a subpoena served on the bank because the mere fact that the bank had branch offices in New York did not satisfy the Constitution's due process

requirements. 768 F.3d at 135, 141. The foreign bank was incorporated and headquartered elsewhere, it had four branch offices in the United States, and only a small portion of its worldwide business was conducted in New York. *Id.* at 135.

This case fits squarely within the precedent set by *Gucci*.[2] As described above, ANZ Bank is incorporated and headquartered in Australia. Kucharski Decl. ¶ 99(a). The Bank has one branch office in New York, only 2% of its assets, operating income, and profit are attributable to the New York Office, and only 0.3% of its employees are based in New York. Maddigan Decl. ¶¶ 3, 6-7. This degree of contact does not render ANZ Bank essentially at home in New York, nor do exceptional circumstance exist that would otherwise support general jurisdiction. *See Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 521 (S.D.N.Y. 2015) (applying *Gucci* to hold that the court did not have general jurisdiction over the branch offices of foreign banks in order to enforce a nonparty subpoena); *see also Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689-90 (7th Cir. 2017) (applying *Daimler* to hold that the court did not have general jurisdiction over branch offices of foreign banks in order to enforce a nonparty Rule 45 subpoena).

APR argues that ANZ Bank has nevertheless consented to jurisdiction in New York because its New York branch is regulated by the International Banking Act of 1978 ("IBA"), 12 U.S.C. §§ 3101-3108, which applies federal banking law to U.S. branches of foreign banks. Def. Opp. 10-11; Oral Argument Tr. 4:1-7. The Second Circuit has rejected this species of argument. The Second Circuit concluded that a foreign corporation did not consent to the exercise of general jurisdiction simply by registering to do business and appointing an agent under the Connecticut business-registration statutes: in light of the "more demanding 'essentially at home'

---

[2] APR conceded at oral argument that if *Daimler* applies to a subpoena issued pursuant to section 1782, the subpoena in this case would be quashed. Oral Argument Tr. 7:14-8:1.

7

test enunciated in *Goodyear* and *Daimler* . . . federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'—perhaps unwitting—to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 637 (2d Cir. 2016) (footnote omitted). The Second Circuit also warned that interpreting a foreign corporation's compliance with the Connecticut business registration statute as consent to jurisdiction "would risk unravelling the jurisdictional structure envisioned in *Daimler* and *Goodyear* based only on a slender inference of consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely." *Id.* at 639.

Similarly, "[n]othing in the IBA causes [a foreign bank's] branches to be 'at home' in the U.S." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017). APR points to language in the IBA subjecting a foreign bank's "Federal branch or agency" to the "rules, regulations, and orders" considered appropriate by the Comptroller of the Currency, including provisions for service of process, and to language requiring that "operations of a foreign bank at a Federal branch or agency shall be conducted with the same rights and privileges as a national bank . . . and shall be subject to all the same duties, restrictions, penalties, liabilities, conditions, and limitations . . . ." Def. Mem. 10 (citing 12 U.S.C. § 3102(b)).[3] These provisions do not indicate that a foreign bank consents to general personal jurisdiction by subjecting itself to the IBA; they merely provide that a foreign bank shall conduct its operations in accordance with U.S. law. APR also cites to the provision in the

---

[3] APR also cites the comparable provisions in the Code of Federal Regulations. Def. Mem. 10-11 (citing 12 C.F.R. §§ 28.13(a)(1), 28.21).

8

Code of Federal Regulations that defines the "home state" of a foreign bank operating pursuant to the IBA as "the state in which the foreign bank has a branch, agency, subsidiary commercial lending company, or subsidiary bank." *Id.* at 10-11 (citing 12 C.F.R. § 28.11(n)). Nothing in the relevant regulations or the IBA provides that "home state" as defined in those regulations is a foreign bank's "home state" for the purpose of general jurisdiction; indeed, the regulations also define a foreign bank's "home country" as "the country in which the foreign bank is chartered or incorporated." 12 C.F.R. § 28.11(l).

The lack of express language in the IBA and related regulations providing that a foreign bank consents to general jurisdiction precludes a finding that ABZ Bank consented to general jurisdiction when it subjected itself to the IBA. *See Brown*, 814 F.3d at 636 (no consent to general jurisdiction pursuant to the Connecticut registration statute in part because the statute does not "contain express language alerting the potential registrant that by complying with the statute and appointing an agent it would be agreeing to submit to the general jurisdiction of the state courts."); *but cf. Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991) (holding foreign corporation consented to jurisdiction because a Pennsylvania statute explicitly provided that registration by a foreign corporation "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." (quoting 42 Pa. Cons. Stat. § 5301)). The IBA cannot be fairly construed as requiring foreign banks to consent to general jurisdiction, and "[a] more sweeping interpretation would raise constitutional concerns prudently avoided absent a clearer statement by [Congress]." *Brown*, 814 F.3d at 623.[4]

---

[4] Registration under New York banking law is also not consent to general jurisdiction. *See Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *40 (S.D.N.Y. Feb. 21, 2017) ("New York does not have personal jurisdiction over any Foreign Defendant by reason of its registration of a branch office pursuant to

9

The case law regarding specific personal jurisdiction in the context of nonparty discovery requests is sparse and unsettled. As the Second Circuit noted, "the Supreme Court has not . . . addressed specific jurisdiction over nonparties." *Gucci Am., Inc.*, 768 F.3d at 136. "At least one circuit has translated [the specific personal jurisdiction] test to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue." *Id.* at 141 (citing *Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996)); *see also Leibovitch*, 852 F.3d at 690 ("[A] district court can have . . . 'specific' jurisdiction over a corporation if the corporation's activities within the jurisdiction of the court are closely related to the lawsuit or, as in this case, to subpoenas . . . issued within that jurisdiction."). And, at least one district court in the Second Circuit has applied that specific personal jurisdiction test to a nonparty. *See Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 98-99 (S.D.N.Y. 2015), *appeal withdrawn* (Feb. 16, 2016).

There is no nexus between ANZ Bank's New York contacts and the subject matter of the discovery sought by APR pursuant to the section 1782 subpoena. The subject matter of the requested discovery concerns turbines in Australia that were leased to an Australian company that received loans from an Australian bank and went into bankruptcy in Australia. None of the requested discovery is located in the United States. Kucharski Decl. ¶ 99(c); Oral Argument Tr. 14:7-17. APR is not aware of any facts connecting ANZ Bank's New York branch office with the underlying facts of the case beyond the possibility that funds transferred pursuant to a letter of credit in favor of Forge's receivers issued by Bank of America's San Francisco branch and

---

New York Banking Law § 200."); *In re: LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) (same).

sponsored by APR *might* have passed through New York. Oral Argument Tr. 4:11-5:22; *see Leibovitch*, 852 F.3d at 690 (holding there was no specific jurisdiction to enforce a nonparty subpoena served on foreign banks' U.S. branches because the subpoenas were "not tailored to the banks' presence or activities in the United States").

During oral argument, APR requested limited jurisdictional discovery to develop facts in support of specific jurisdiction in the event this Court were to hold that personal jurisdiction is required for 1782 subpoenas. Oral Argument Tr. 7:14-21. In order to be entitled to jurisdictional discovery, APR must make a "sufficient start" toward establishing personal jurisdiction, *Tarsavage v. Citic Tr. Co.*, 3 F. Supp. 3d 137, 148 (S.D.N.Y. 2014), and must rely on more than "conclusory allegations" or "mere speculations or hopes that jurisdiction exists" so that jurisdictional discovery does not "lead to an unwarranted fishing expedition," *Reich v. Lopez*, 38 F. Supp. 3d 436, 459 (S.D.N.Y. 2014) (internal quotation marks and citations omitted), *aff'd*, 858 F.3d 55 (2d Cir. 2017). Because APR has not done so, the Court will not permit it to pursue jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, ANZ Bank's motion to quash APR's section 1782 subpoena is GRANTED. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 1 and to close the case.

**SO ORDERED.**

**Date: September 1, 2017**
New York, New York

**VALERIE CAPRONI**
United States District Judge
Part I

11